UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SCOTT, #191939

        Plaintiff,                              Case No. 04-70714

vs.

                                               Honorable Arthur J. Tarnow
                                               Magistrate Judge Steven D. Pepe

SCOTT FREED, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS (DKT. # 23)**

### I.    BACKGROUND

On February 25, 2004, Plaintiff, a prisoner incarcerated in the Michigan Department of Corrections (MDOC), filed a civil rights claim against MDOC hearing investigator Scott Freed and MDOC hearing officers Gary Kuiper and Arvid Perrin (Dkt. # 3). Defendants' filed a motion to dismiss pursuant to FRCP 12(b)6. All dispositive motions were referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff's complaint alleges that the Defendant Freed failed to properly assist him in the investigation of major misconduct tickets that had been issued against him and "exhibited ill-will...anger, hostility and antagonism" toward Plaintiff because Plaintiff had filed a lawsuit and grievances involving another prison guard at a different facility, Berry Freed, and that Berry Freed and Defendant Freed are related (Dkt. #3, ¶¶ 28, 29). Plaintiff alleges that sometime during their interactions Defendant Freed stated "[I]f you didn't like Sergeant (Berry) Freed, you'er (sic) really going to hate me" (*id*., ¶ 30).

Specifically, Plaintiff alleges that he was issued a major misconduct ticket by the law librarian on October 7, 2000, for being out of place when he failed to attend a 12:30 library call out (Dkt. # 3, ¶¶ 11-13). Plaintiff alleges that he was authorized to miss the law library call out by other staff and, therefore, the major misconduct ticket was false (Dkt. #3, ¶¶ 15-16). Plaintiff requested that Defendant Freed, as the hearing investigator, assist him in gathering evidence to support his theory that the ticket was issued as part of a "campaign of abuse and harassment" (*Id.*, ¶¶ 17-21).

Defendant Freed met with Plaintiff on October 11, 2000, and asked for Plaintiff's investigative requests (*id.*, ¶ 24). Plaintiff was not prepared to provide the requests and asked for an additional seven days, until October 18. Defendant Freed called Plaintiff back to meet with him on October 13, 16 and 18 to ask for the requests (*id.*, ¶ 22, 25). On the last meeting Plaintiff asked for an additional day, until October 19, to which Defendant Freed allegedly agreed (*id.*, ¶ 22, 34). Plaintiff had completed the investigation requests in time to be submitted on October 19 (*id.*, ¶ 35). Defendant Freed did not call Plaintiff out again on the 19th and instead scheduled the hearing for October 20 (*id.*, ¶ 36). Defendant Freed then submitted an allegedly false statement to the hearing officer, Defendant Perrin, which indicated that Plaintiff had been uncooperative during the investigation (*id.*, 39).

Plaintiff's allegations against Defendant Perrin, the hearing officer for this first ticket, are that he refused to: review the investigation requests Plaintiff had tried to submit to Defendant Freed, adjourn the hearing, allow an investigation to be conducted and disqualify Defendant Freed (*id.*, ¶ 41). Plaintiff also alleges that the staff statements relied on by Defendant Perrin to support Plaintiff's out of place ticket did not dispute Plaintiff's contention that he had prior staff permission

2

not to attend the library call out (*id.*, p. 9, ¶ 42).¹ The Hearing Report indicates that Plaintiff told Defendant Perrin that he was aware that his library call out and chow line conflicted and that he had received permission to go to early chow (*id.*, Exhibit 6(B)). When early chow was not called on the day in question Plaintiff waited until his chow line was called and then asked staff what he should do. He alleged that he was told that he could attend chow and then go to the library. Defendant Perrin found that Plaintiff was aware of his library call out for 12:30, left the unit at 12:36 to go to chow, did not have permission to go late or miss the call out and was therefore, out of place.

On November 9, 2000, Plaintiff received another false misconduct ticket, this time for disobeying a direct order given by Officer Cartensen (the "*Cartensen* ticket")(*id.*, p. 11, ¶¶ 30, 32). Officer Cartensen had also written a statement supporting a separate misconduct ticket that Plaintiff received around this same time for disobeying an order to return to his unit that was issued by an officer Haynes (the *"Haynes* ticket")(*id.*, p. 12, ¶ 33; p. 18 ¶ 63).

Plaintiff alleges that Defendant Freed called him out on November 13 for an interview on the *Cartensen* ticket and "demanded" Plaintiff's statement and investigation requests (*id.*, p. 13, ¶¶ 37, 38). Plaintiff advised Defendant Freed that he was working on a legal brief that was due the following day and requested until November 15 to produce the investigation requests (*id.*, pp. 13-14,

---

¹ Plaintiff contends that the Warden's subsequent investigation of Plaintiff's grievance regarding the missed law library call out incident revealed that Plaintiff had received staff permission either to attend the law library call out or to go and eat (Dkt. # 3, p. 10, ¶ 25). The attached grievance response indicates that Warden Bock found that Plaintiff had applied for a law library pass for 12:30-1:30 on the day in question, and that his regular "chow line" was called at 12:36 (*id.*, Exhibit 1(c)). Plaintiff picked up his law library pass at 12:36 and asked permission to go to chow and then to the library but he was told that he would have to choose one or the other because it was too late to attend both. Plaintiff went to chow, returned at 1:10 and again asked if he could go to the library. He was told that the librarian had called at 12:40 looking for him and told staff that Plaintiff could not attend library late. Warden Bock determined that Plaintiff did not participate in activities which would create a need for scheduling his law library time to conflict with his chow line and found that "evidence suggests [Plaintiff] manipulated the situation from the beginning to make it appear that staff prevented him from access to law library".

3

¶¶ 40, 41).  Defendant Freed refused to provide Plaintiff with copies of the *Haynes* ticket and supporting documentation or review the contents of it with Plaintiff.  While Freed did disclose the written statements supporting the *Cartensen* ticket, he refused to provide Plaintiff with copies. (*id.*, p. 14, ¶¶ 43, 44).  Defendant Freed called Plaintiff out the following day, November 14, "demanding" the investigation requests (*id.*, p. 15, ¶ 47).  Plaintiff did not have the requests done and Defendant Freed scheduled the hearing for November 15, 2000, before Defendant Kuiper (*id.*, ¶ 48).           Plaintiff's allegations against Defendant Kuiper, the hearing officer for the *Cartensen* ticket, are that he refused to: adjourn the hearing so as to allow Plaintiff to submit his investigation requests, allow an investigation and disqualify Defendant Freed (*id.*, p. 16, ¶ 51).  Plaintiff further alleges that Defendant Kuiper stated "your lawsuits against the prison demonstrate an inability to adjust to prison and maybe thirty days detention will teach you (Plaintiff) some respect" (*id.*, ¶ 54). The Hearing Report indicates that Plaintiff told Defendant Kuiper that when he was told by an officer that he could not wear sweat pants to heath care he responded by asking where this was written (*id.*, Exhibit 7(B)).  He said that the officer then responded by telling him to "go ahead and go" and that he wanted to show that the officer was lying in the misconduct report.  Plaintiff told Defendant Kuiper about his suspicions that Defendant Freed was related to Berry Freed and asked for more time to conduct an investigation.  Defendant Kuiper indicated that Plaintiff had received 24 hours notice as required by MDOC policy and stated Plaintiff could have provided a statement and investigative requests to Defendant Freed at their meeting.  Defendant Kuiper found that Plaintiff had been told not to go to health care wearing sweat pants, asked where this was written and then proceeded to health care in the sweat pants –  he sustained the charge.

Subsequent to the hearing Plaintiff received copies of the *Haynes* ticket showing that it had

been dismissed without a hearing because the reviewing Sergeant felt a yard pass showed that Plaintiff had returned to his unit as Haynes had ordered (*id.*, p. 12, ¶ 34). Because the yard pass information was contrary to Cartensen's statement in support of the *Haynes* ticket (Cartensen had stated that Plaintiff never returned to the unit), Plaintiff alleges that he should have been provided with the *Haynes* ticket information for use in his hearing on the *Cartensen* ticket for purposes of challenging Cartensen's credibility (*id.*, p. 18, ¶ 64).

Plaintiff also alleges that MDOC has unwritten policies for hearing officers which require them to submit guilty verdicts in 90% of the hearings before them and to find staff testimony more credible than prisoners whenever such conflicts (*id.*, p. 19, ¶¶ 69, 70).

## II.    LEGAL STANDARD

A court considering a motion to dismiss under Rule 12(b)(6) "must accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir. 2002) (citing *Turker v. Ohio Dep't of Rehab. & Corr.,* 157 F.3d 453, 456 (6th Cir.1998)). "Dismissal of the complaint is proper 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Trzebuckowski v. City of Cleveland,* 319 F.3d 853, 855 (6th Cir.2003) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

In applying these standards, the court must read plaintiff's pro se complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Rules 12(b) and (c) of the Federal Rules of Civil Procedure provide that if, on a motion to

dismiss under Rule 12(b)(6) or a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment and disposed of as provided in Rule 56.

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). Yet, once the moving party has satisfied the initial burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party's failure to "make a sufficient showing to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial" will result in dismissal of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III. ANALYSIS**

    **A. Failure to State a Claim**

Accepting all well-plead factual allegations of the complaint as true and construing the complaint in the light most favorable to Plaintiff the following chronology has been pled:

- Plaintiff initiated a lawsuit and filed grievances involving "Berry Freed" and other prison personnel.
- Staff gave Plaintiff permission either to go to his library call out or to chow. Plaintiff chose to go to chow, and the law librarian issued Plaintiff an October 7, 2000, misconduct ticket for being out of place when he did not come to the law library as scheduled.
- Plaintiff requests a hearing investigator and is assigned Defendant Freed. Defendant Freed meets with Plaintiff on this matter on October 11, 2000. Plaintiff requests until October 18 to submit his investigation requests.
- Defendant Freed states, at some time, "[I]f you didn't like Sergeant (Berry) Freed, you'er (sic) really going to hate me". He also treats Plaintiff with anger and hostility and refuses to allow Plaintiff the eight-day extension he sought to allow additional time for Plaintiff to provide his investigation requests on the out of place ticket. Defendant Freed calls Plaintiff out on October 13, 16 and 18 asking for the investigation requests and then schedules the hearing to take place on October 20, even though Plaintiff has said he cannot get the requests done until the 19th, and without calling Plaintiff out on the 19th to get the completed requests. Defendant Freed submits a statement to Defendant Perrin indicating that Plaintiff was uncooperative during the investigation.
- At the October 20th hearing Defendant Perrin refuses to adjourn the hearing, to allow an investigation to be conducted or to disqualify Defendant Freed and instead he finds Plaintiff guilty based on the record, even though there are no staff statements to contradict Plaintiff's

7

testimony that he was authorized to miss the library call out.

- Warden Bock's subsequent grievance investigation finds that staff informed Plaintiff that he would have to choose between attending his law library call out (scheduled for 12:30-1:30) or chow (scheduled for some time around 12:30) due to the fact that the times conflicted and Plaintiff came for his law library pass late.

- The November 9, 2000, *Cartensen* ticket is issued and Defendant Freed is once again assigned as the hearing investigator. Defendant Freed meets with Plaintiff on November 13 to discuss the ticket. Plaintiff requests until November 15 to submit the investigation requests. Defendant Freed refuses to provide Plaintiff with information regarding the dismissed *Haynes* ticket, and does not provide copies of the information supporting the *Cartensen* ticket, though Plaintiff is allowed to review these items.

- Defendant Freed calls Plaintiff out on November 14 for the investigative requests and, when Plaintiff does not have them, schedules the hearing on the *Cartensen* ticket for November 15 before Defendant Kuiper. Defendant Freed again submits a statement indicating that Plaintiff was uncooperative in the investigation.

- Defendant Kuiper again refuses to adjourn the hearing, to allow an investigation or to disqualify Defendant Freed. Defendant Kuiper finds Plaintiff guilty and states: "Your lawsuits against the prison demonstrate an inability to adjust to prison and maybe thirty days detention will teach you (Plaintiff) some respect".

- Plaintiff subsequently learns that the dismissed *Haynes* ticket had been supported by a statement from Officer Cartensen in which he falsely stated that Plaintiff had not returned to his unit, which was contradicted by a yard pass showing that he had.

8

### 1.     Absolute Judicial Immunity - Hearing Officers

The Sixth Circuit has held that the Michigan statutory law embodied in 1979 Mich. Pub. Act No. 140 confers upon prison hearing officers the type of independence and responsibility which grants them absolute immunity from liability with respect to their judicial acts. *See* M.C.L. 791.251-255; *Shelly v. Johnson*, 849 F.2d 228, 229 (6th Cir. 1988).  Therefore, a "hearing officer of the Michigan Department of Corrections is entitled to absolute immunity for liability under 42 U.S.C. § 1983 for acts committed in the performance of his duties in a prison disciplinary hearing". *Shelly v. Johnson*, 684 F.Supp. 941, 944 (W.D. Mich., 1987).

Plaintiff argues that this immunity should not extend to the declaratory relief he is seeking against Defendants Perrin and Kuiper.  Yet, while it is true that *prospective* declaratory and injunctive relief may be available even against one with judicial immunity, the relief sought by Plaintiff is really a challenge to the final outcome of the disciplinary proceedings based on the merits of his claims.

Plaintiff has requested a declaratory judgment stating: (a.) Defendants Perrin and Kuiper's adherence to a quota system and deference to staff testimony "violated Plaintiff's right of due process of the law under the Fifth and Fourteenth Amendments"; (b.) Defendant Perrin's finding of guilt was not supported by evidence which violated Plaintiff's Due Process rights; and (c.) the manner in which Defendants conducted the disciplinary hearings violated Plaintiff's right to fair and just treatment pursuant to Michigan Constitution, Art I, § 17 (Dkt. # 3, p. 32-33, ¶¶ 4-6).  Because the relief sought is not prohibitive but rather seeks a new determination of the claims against Plaintiff based on the merits, the *Rooker-Feldman* doctrine bars Plaintiff's claim as an attempted appeal from the hearing officer's decisions. *See District of Columbia Court of Appeals v. Feldman*,

460 U.S. 462, 486 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *see also Bodell v. McDonald*, 4 Fed. Appx. 276, 279 (6th Cir. 2001).

### 2. Are Claims Cognizable Under § 1983?

#### A. Hearing Officers

Plaintiff's claims for declaratory relief against the hearing officers are not cognizable under § 1983. A state prisoner does not state a cognizable claim challenging his imprisonment if a ruling on his claim would necessarily render his continuing confinement invalid, until and unless the reason for his continued confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or has been called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *Chatman v. Slagle*, 107 F.3d 380, 382 (6th Cir.1997). This "favorable termination" requirement was extended to prisoner allegations of due process violations in prison discipline hearings resulting in deprivation of good-time credits, as in the present matter, in *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The *Edwards* Court held that a claim challenging the procedures used to deny an inmate his liberty, is also not cognizable if a ruling would necessarily imply the invalidity of the confinement – even when, as here, a plaintiff claims that a biased hearing officer tainted his disciplinary hearing. *Edwards, supra*, 520 U.S. 641.[2]

Plaintiff argues that Defendants Perrin and Kuiper were biased against him due to the MDOC's "unwritten policy" and that Defendant Kuiper retaliated against him for filing lawsuits involving MDOC personnel. An "allegation of intentional misconduct on the part of the hearing

---

[2] Other claims challenging procedures employed at a hearing may be cognizable, if the nature of the challenge to those procedures does not undermine the validity of the decision made at that hearing. *See Heck*, 512 U.S. at 482-83 (citing to *Wolff v. McDonnell*, 418 U.S. at 554).

10

officer at the disciplinary proceeding necessarily implie[s] the invalidity of the decision against" a plaintiff. *Goodwin v. Ghee*, 330 F.3d 446, 448 (6th Cir. 2003)(5-5 decision)(Gilman, J. concurring); *see also, Foster-Bey v. Duncan*, 142 F.3d 433, 1998 WL 124002, *2 (6th Cir.1998). In this respect Plaintiff's allegations are barred by *Edwards v. Balisok* as interpreted by *Goodwin v. Ghee*, and Plaintiff's § 1983 claims against Defendants Perrin and Kuiper should be dismissed.

### B. Defendant Freed

#### I. Due Process

> The fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed. *Cf. U.S. Civil Service Commission v. National Ass'n of Letter Carriers*, 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973); *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. *Cf. Morrissey v. Brewer*, 408 U.S., at 488, 92 S.Ct., at 2603. In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.

*Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

The *Wolff* Court explained that prisoners facing disciplinary charges are entitled to the following procedural rights: advance written notice of the claimed violation; a hearing on the charges; at least a brief period of time after the notice, no less than 24 hours, to prepare for the appearance at the hearing; the ability to call witnesses and present documentary evidence if not unduly hazardous to institutional safety or correctional goals; a written statement from the factfinder(s) as to the evidence relied upon and the reasons for the disciplinary action taken. *Wolff*,

418 U.S. at 563-64, 566 (1974).[3]

Plaintiff's principal Due Process violation claim stems from the fact that Defendant Freed allegedly refused to grant him extensions of time in which to prepare his defense and failed to assist him in conducting an investigation. Yet it is undisputed that Plaintiff was given more than the 24 hours required by *Wolff* and MDOC Administrative Rule 315 (Rule 315) in which to prepare for the hearings. Further, "[a] prisoner's due process rights during a disciplinary hearing do not include the right to a hearing investigator." *Love v. Farley*, 925 F.2d 1464, 1991 WL 16473, *1 (6th Cir. 1991)(citing *Wolff*, 418 U.S. at 570). Neither *Wolf* nor any other cases found have created a constitutional right to extensions of time based on facts similar to those involved in this case.

---

[3] MDOC Administrative Rule 315 mirrors these requirements for hearings:
(1) Not less than 24 hours before a formal hearing, a prisoner shall receive written notice of the hearing.
....
(4) If the prisoner fails to appear for a hearing after proper notice has been given as set forth in subrule (1) of this rule, the hearing officer may proceed with the hearing and make a decision in the absence of the prisoner.
(5) A prisoner has all of the following rights at a formal hearing:
(a) To be present and offer evidence, including relevant documents and oral and written arguments, on his or her own behalf.
(b) To compel disclosure of documents specifically relevant to the issue before the hearing officer, unless disclosure presents a threat to personal or institutional safety.
(c) To present evidence from necessary, relevant, and material witnesses, when to do so is not unduly hazardous to institutional or safety goals.
(d) To have presented to the hearing officer the report of a staff investigator who interviewed and obtained statements from relevant witnesses, secured relevant documents, and gathered other evidence, if a staff investigator was requested when notice of the charges was given, unless that request is denied as set forth in subrule (6) of this rule, and if the prisoner has reasonably cooperated with the staff investigator.
(e) To submit written questions to the hearing investigator to be asked of witnesses.
(f) To request disqualification of a hearing officer for personal bias, upon presenting to the hearing officer at the hearing an affidavit containing specific evidence of personal bias. The hearing officer shall make a specific ruling on this request in the hearing report. If personal bias is found, the hearing shall be immediately adjourned and assigned to a different hearing officer.

MI. ADC. R. 791.3315.

12

Therefore, Plaintiff was afforded all the process he was due under the United States Constitution.[4]

To the extent Plaintiff is arguing that the State of Michigan created due process procedures for disciplinary hearings in excess of *Wolff* with Rule 315 and that he was denied those procedures, this claim, if successful, would invalidate the disciplinary hearing outcome. Therefore, this claim would not be cognizable under § 1983 until and unless the disciplinary hearing outcome has been reversed, as discussed above. *Edwards v. Balisok*, 520 U.S. at 648.

Therefore, it is recommended that Plaintiff's Due Process claim against Defendant Freed be dismissed for failure to state a claim for which relief can be granted.

### ii. Retaliation

A retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court affirmed that prisoners have a constitutional right of access to the courts. Yet, such a right is contingent on whether or not a prisoner satisfies Article III standing doctrine. In order to have standing in federal courts, the alleged injury must be "distinct and palpable," *Allen v. Wright*, 468 U.S. 737, 751 (1984) (quoting

---

[4] Plaintiff levied a second due process count pursuant to the Michigan Constitution's Fair and Just Treatment Clause. Yet, "the Michigan courts have held that art. I, § 17, affords no greater procedural protections than those afforded by the federal Constitution. *See Gora v. City of Ferndale*, 551 N.W.2d 454, 458 (Mich. App. 1996) *rev on other grounds*; *Saxon v. Department of Soc. Servs.*, 479 N.W.2d 361, 366 (Mich. App. 1991), *appeal denied*, 479 N.W.2d 352 (Mich. 1991). Because [Plaintiff] received all the process [to which he was] entitled under the federal Constitution, [his] state due process rights were also satisfied." *North American Group, Inc. v. County of Wayne*, 1997 WL 34658, *5 (6th Cir. 1997).

*Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91 (1979)), and not abstract, conjectural, or hypothetical. *Id.* The injury must also be "fairly traceable" to the challenged action, and relief must be the likely result of a favorable decision. *Id.* Without a showing of actual injury, a claim will fail for lack of standing. *Lewis v. Casey*, 518 U.S. 343 (1996). Neither will generalized claims of injury suffice; the injury must be concrete and particular. *Mattox v. City of Forest Park*, 183 F.3d 515 (6th Cir. 1999).

Dismissal of the instant complaint is not recommended under a 12(b)(6) standard because relief could be granted if facts could be proved consistent with Plaintiff's allegations.[5]

### a. Protected Conduct

Plaintiff was engaged in constitutionally protected activity when he filed his grievances and his lawsuit involving Berry Freed, because an inmate has an undisputed First Amendment right to file grievances as well as a law suit against prison officials on his own behalf. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir.1996).

### b. Causal Connection

Defendants argument that Plaintiff has failed to establish a causal connection between the protected activity and the retaliatory actions must also fail under the 12(b)(6) standard. Plaintiff has, in his response to Defendants' motion, identified the lawsuit and grievances he filed in 1995 which

---

[5] Defendant Freed's claim to qualified immunity was based upon the assumption that Plaintiff had not sufficiently pled facts to support a constitutional violation. Yet, as discussed above, the chronology Plaintiff has pled in support of his retaliation claim, although light on facts, is sufficient to survive a 12(b)(6) motion in that there is a genuine issue of material fact regarding whether Defendant Freed retaliated against Plaintiff for engaging in a protected First Amendment activity. The first prong of the qualified immunity test is satisfied when First Amendment retaliation is adequately alleged. *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 677 (6th Cir.2001). Because Defendant Freed has not argued that Plaintiff's filing of lawsuits and/or grievances was unprotected or not clearly established his qualified immunity defense should not be granted.

14

either name or relate to Berry Freed. His complaint alleges that Defendant Freed (a.) is related to Berry Freed and (b.) made the comment to Plaintiff, "If you didn't like Sergeant (Berry) Freed you'er (sic) really going to hate me", which could be construed to mean that he, at the very least, knew about the lawsuits and grievances involving Berry Freed.

Whether all of this can be proven remains to be seen, but it has been pled and must be taken as established on a 12(b)(6) motion.

### c. Adverse Action That Would Deter a Person of Ordinary Firmness

Defendants' argument that Plaintiff has failed to plead sufficient adverse action because Defendant Freed properly prepared for the hearings also must fail. There is currently a genuine issue of material fact regarding Defendant Freed's investigation into the tickets at issue and the timing of the hearings. Plaintiff alleges that other prisoners have to wait for weeks before their tickets come before the hearing officers while his hearing was quickly scheduled for a time when Defendant Freed knew he would not be prepared to defend himself. Defendant Freed contends that he repeatedly called Plaintiff out in an attempt to get investigative requests so that a report could be made on the tickets, but that Plaintiff refused to cooperate. Plaintiff alleges that Defendant Freed purposely called him out at times when he knew Plaintiff would not be prepared to submit the requested information. The parties also disagree as to whether Plaintiff was provided paper on which to write out his statement.

In a trial on this matter the initial burden of proof for each element of the retaliation claim will be on the Plaintiff. *Thaddeus-X*, 175 F.3d at 394; *Brown v. Crowley*, 312 F.3d 782, 790 (6th Cir. 2002). Yet a 12(b)(6) motion only tests the sufficiency of the pleadings, and the chronology that has been pled, which if taken as true- i.e. Defendant Freed is related to Berry Freed and/or

15

Defendant knew about the lawsuits and grievances Plaintiff filed against Berry Freed and, because of this, Defendant chose to rush Plaintiff's misconduct tickets to hearing without conducting the usual investigation and/or lulled Plaintiff into thinking he had more time to prepare and purposely scheduled the hearings when Plaintiff was unprepared - is sufficient to state a cause of action for retaliation against Defendant Freed.[6]

Furthermore, this retaliation claim does not "necessarily" implicate the validity of the disciplinary hearings and is therefore cognizable under § 1983. If what has been pled is true - Defendant Freed treated Plaintiff differently than other prisoners by rushing his tickets to hearing without giving Plaintiff a chance to prepare or submit investigation requests in retaliation for Plaintiff's grievance and lawsuit activities - this would not invalidate the hearings because Plaintiff still received the minimum Due Process required by *Wolff* and Rule 315 because it is undisputed that he received at least 24 hours notice of the hearing in which to prepare.

This fact distinguishes this case from *Edwards v. Balisok,* 520 U.S. 641 (1997), and *Goodwin v. Ghee,* 330 F.3d 446 (6th Cir. 2003), where if the respective plaintiff prevailed the "intentional misconduct on the part of the [defendant(s) at the hearing] necessarily implied the invalidity of the decision" of the defendant hearing officer in *Edwards* or the defendant parole board members in *Goodwin* whose procedures and actions were being challenged. *Goodwin v. Ghee,* 330 F.3d at 488. Defendant Freed's actions were totally independent of the hearing officer in this case; they did not cause the hearing process to fall below the requirements of due process; and they may

---

[6] On a motion to dismiss, this Court must take Plaintiff's allegations as true. Plaintiff asserts Defendant Freed is related to Berry Freed and that Defendant Freed stated to Plaintiff, "[I]f you didn't like Sergeant (Berry) Freed, you'er (sic) really going to hate me." If discovery demonstrates Scott Freed is not related to Berry Freed, and/or Scott Freed had no reason to know of Plaintiff's law suit against Berry Freed, it may be that the causation element of this retaliation claim cannot stand, without more, on the alleged statement of Scott Freed to Plaintiff.

16

or may not have had any effect on the outcome of the hearing process. These are critical differences from the wrongs charged in *Edwards* and *Goodwin* that necessarily destroyed the due process underpinnings of the process involved. In the present case, Freed's alleged wrongdoing – like a corrections officer retaliating against an inmate by keeping him awake all night before an upcoming misconduct or parole board hearing – does not directly infect the procedure itself nor does it *"necessarily"* imply the invalidity of the later decision .

In addition, while a First Amendment access to the court claim requires a showing that a defendant's actions prejudiced the plaintiff's litigation in some way, this is not required of a First Amendment retaliation case which only requires the retaliatory act would dissuade a person of ordinary prudence from exercising First Amendment rights.[7] While this may be a material fact to be determined, it cannot be said as a matter of law that no inmate would feel inhibited in exercising First Amendment rights if he knew that in one or more future major misconduct charges he would be put on a fast track for a hearing without a desired amount of time and without outside assistance to adequately prepare. The constitutional tort of retaliation occurs when the defendant takes the

---

[7] It is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right. See, e.g., *Crawford-El v. Britton*, 523 U.S. 574, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (misdirection of personal belongings may state a claim of retaliation for exercise of First Amendment rights); *Board of County Comm'rs, Wabaunsee County v. Umbehr*, 518 U.S. 668, 135 L. Ed. 2d 843, 116 S. Ct. 2342 (1996) (nonrenewal of plaintiff's government contract in retaliation for his exercise of free speech is actionable); *Perry v. Sindermann*, 408 U.S. 593, 597, 33 L. Ed. 2d 570, 92 S. Ct. 2694 (1972) ("If the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited."); *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1225 (6th Cir.) ("[A] claim of retaliation for exercise of the constitutional right of access is cognizable under § 1983."), cert. denied, 139 L. Ed. 2d 108, U.S., 118 S. Ct. 164 (1997); *Zilich v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994) ("The law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional . . . ."), cert. denied, 514 U.S. 1036, 131 L. Ed. 2d 288, 115 S. Ct. 1400 (1995).
*Thaddeus-X*, 175 F.3d at 386.

retaliatory act, and this wrong is not erased merely because the inmate would have been found guilty on the ticket even if more adequate time to prepare was provided as well as a zealous hearing investigator. While this factor would be relevant to the measure of damages, it is not relevant to the issue of liability.[8] Therefore, it is recommended that the claim of retaliation against Defendant Freed not be dismissed.

## III. RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Defendants' Motion to Dismiss be GRANTED IN PART, with only the claim of retaliation against Defendant Freed remaining.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided

---

[8] As the Sixth Circuit has noted, a plaintiff may be able to recover nominal damages for violations of his or her constitutional rights even if there is no evidence of a physical injury:

> [A]fter *Carey v. Piphus*, 435 U.S. 247, 266 98 S. Ct. 1042, 1053 (1978), where the Court held that a plaintiff was entitled to at least nominal damages for violation of his constitutional rights, the question of whether there has been a constitutional violation should not be considered dependent on whether actual damages have occurred.

*Martin v. Kelley*, 803 F.2d 236, 238 n.3 (6th Cir. 1986)(citations omitted); see also *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004)(noting that nominal damages, punitive damages, and injunctive and declaratory relief may be available under the PLRA even to a prisoner who does not sustain a physical injury); *Rowe v. Shake*, 196 F.3d 788, 781-82 (7th Cir. 1999)(holding that "[a] prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained"); *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998)(same). In one unpublished opinion, the Sixth Circuit allowed a prisoner's First Amendment retaliation claim to proceed while holding that most of the prisoner's other claims were precluded by the physical injury requirement of 42 U.S.C. § 1997e(e). *Williams v. Ollis*, 2000 WL 61434459, *2 (6th Cir. Sept. 18, 2000)(unpublished opinion)(citing Canell, 143 F.3d at 1213). See also *Edwards v. Balisok*, 520 U.S. at 645 ("That is to say, his claim posited that the procedures were wrong, but not necessarily that the result was. The distinction between these two sorts of claims is clearly established in our case law, as is the plaintiff's entitlement to recover at least nominal damages under § 1983 if he proves the former one without also proving the latter one.")

for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: March 1, 2006                                                         s/Steven D. Pepe
Ann Arbor, Michigan                                                        United States Magistrate Judge



Certificate of Service

I hereby certify that a copy of this Report and Recommendation was served upon the Plaintiff and attorney(s) of record by electronic means or U.S. Mail on March 1, 2006.

s/John F. Purdy
Deputy Clerk