UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SCOTT, #191939

        Plaintiff,

vs.

        Case No. 04-70714

        Honorable Judge Arthur J. Tarnow
        Magistrate Judge Steven D. Pepe

SCOTT FREED, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION REGARDING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT (DKT. # 53)**

This is a prisoner's civil rights action in which defendants have filed a Motion for Summary Judgment which is referred for a Report and Recommendation under 28 U.S.C. §636(b)(1)(B). For the reasons stated below, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment be GRANTED, Plaintiff's §1983 retaliation claim against Defendant Freed be dismissed with prejudice and Plaintiff's supplemental state claim under the Michigan Constitution for Fair and Just Treatment against all defendants be dismissed without prejudice for lack of subject matter jurisdiction.

**I.   BACKGROUND**

    **A.  Procedural History**

On February 25, 2004, Plaintiff, a prisoner incarcerated in the Michigan Department of Corrections (MDOC), filed a civil rights claim against MDOC hearing investigator Scott Freed and MDOC hearing officers Gary Kuiper and Arvid Perrin (Dkt. # 3).

On July 14, 2005, Defendants filed a motion for dismissal and following the undersigned's

report and recommendation and resulting objections, Judge Arthur Tarnow issued a March 31, 2006, Order dismissing all claims except Plaintiff's Michigan Constitution Fair and Just Treatment claim against all Defendants and §1983 Retaliation claim against Defendant Scott Freed (Dkt. # 46). Defendants have now filed their motion for summary judgment, which was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B). Plaintiff sought and was granted an extension of time to respond.

### B. Alleged Facts

As the nonmoving party, Plaintiff is entitled to have the court rely upon his version of the facts. *Scott v. Churchill*, 377 F.3d 565, 567 (6th Cir. 2004). Plaintiff's complaint alleges that Defendant Freed failed to properly assist him in the investigation of major misconduct tickets that had been issued against him and "exhibited ill-will . . . anger, hostility and antagonism" toward Plaintiff because Plaintiff had filed a lawsuit and grievances involving another prison guard at a different facility, Berry Freed, and that Berry Freed and Defendant Freed are related (Dkt. #3, ¶¶ 28, 29).

Specifically, Plaintiff alleges that he was issued a major misconduct ticket by the law librarian on October 7, 2000, for being out of place when he failed to attend a 12:30 library call out (Dkt. # 3, ¶¶ 11-13). Plaintiff alleges that he was authorized to miss the law library call out by other staff and, therefore, the major misconduct ticket was false (Dkt. #3, ¶¶ 15-16). Plaintiff requested that Defendant Freed, as the hearing investigator, assist him in gathering evidence to support his theory that the ticket was issued as part of a "campaign of abuse and harassment" (*id.*, ¶¶ 17-21).

Defendant Freed met with Plaintiff on October 11, 2000, and asked for Plaintiff's

investigative requests (*id.*, ¶ 24). Plaintiff was not prepared to provide the requests and asked for an additional seven days, until October 18.[1] Defendant Freed called Plaintiff back to meet with him on October 13, 16 and 18 to ask for the requests (*id.*, ¶ 22, 25).

On the last meeting, October 18, 2000, Plaintiff asked for an additional day, until October 19, to which Defendant Freed allegedly agreed (*id.*, ¶ 22, 34). Plaintiff alleges that during this meeting Defendant Freed stated "If you didn't like Sgt Freed, then you're really going to hate me" (Dkt. #53-8, p.2). Plaintiff requested permission to file a grievance regarding this meeting on October 18, 2000 (*id.*).

Plaintiff had completed the investigation requests in time to be submitted on October 19 (*id.*, ¶ 35). Defendant Freed did not call Plaintiff out again on the 19th and instead scheduled the hearing for October 20 (*id.*, ¶ 36). Defendant Freed then submitted an allegedly false statement to the hearing officer, Defendant Perrin, which indicated that Plaintiff had been uncooperative during the investigation (*id.*, 39). Plaintiff requested permission to file another grievance against Defendant Freed on October 19 and then resubmitted the same with updated information on October 23, 2000 (Dkt. #53-8, 53-9).

Plaintiff's allegations against Defendant Perrin, the hearing officer for this first ticket, are that he refused to: review the investigation requests Plaintiff had tried to submit to Defendant Freed, adjourn the hearing, allow an investigation to be conducted and disqualify Defendant Freed (*id.*, ¶ 41). Plaintiff also alleges that the staff statements relied on by Defendant Perrin to support

---

[1] Warden Block placed Plaintiff on modified access status on October 12, 2000 – meaning he could receive access to the grievance filing system only upon a showing that he could present a grieveable issue (Dkt. #53-7, p.2).

Plaintiff's out of place ticket did not dispute Plaintiff's contention that he had prior staff permission not to attend the library call out (*id*., p. 9, ¶ 42).[2] The Hearing Report indicates that Plaintiff told Defendant Perrin that he was aware that his library call out and chow line conflicted and that he had received permission to go to early chow (*id.*, Exhibit 6(B)). Early chow was not called on the day in question. Plaintiff waited until his chow line was called. He then asked staff what he should do. He alleges that he was told that he could attend chow and then go to the library. Defendant Perrin found that Plaintiff was aware of his library call out for 12:30, left the unit at 12:36 to go to chow, did not have permission to go late or miss the call out and was therefore, out of place.

On November 1, 2000, the Grievance Coordinator rejected Plaintiff's requests to file grievances against Defendant Freed related to his investigation on the first major misconduct ticket (Dkt. #53-11, pp. 2-3). On February 21, 2001, Plaintiff's administrative appeal of the first major misconduct ticket was denied.

On November 9, 2000, Plaintiff received another misconduct ticket he alleges was false, this time for disobeying a direct order given by Officer Cartensen (the "*Cartensen* ticket") (*id.*, p. 11,

---

[2] Plaintiff contends that the Warden's subsequent investigation of Plaintiff's grievance regarding the missed law library call out incident revealed that Plaintiff had received staff permission either to attend the law library call out or to go and eat (Dkt. # 3, p. 10, ¶ 25). The attached grievance response indicates that Warden Bock found that Plaintiff had applied for a law library pass for 12:30-1:30 on the day in question, and that his regular "chow line" was called at 12:36 (*id.*, Exhibit 1(c)). Plaintiff picked up his law library pass at 12:36 and asked permission to go to chow and then to the library but he was told that he would have to choose one or the other because it was too late to attend both. Plaintiff went to chow, returned at 1:10 and again asked if he could go to the library. He was told that the librarian had called at 12:40 looking for him and told staff that Plaintiff could not attend library late. Warden Bock determined that Plaintiff did not participate in activities which would create a need for scheduling his law library time to conflict with his chow line and found that "evidence suggests [Plaintiff] manipulated the situation from the beginning to make it appear that staff prevented him from access to law library".

4

¶¶ 30, 32). Officer Cartensen had also written a statement supporting a separate misconduct ticket that Plaintiff received around this same time for disobeying an order to return to his unit that was issued by an officer Haynes (the *"Haynes* ticket")(*id.*, p. 12, ¶ 33; p. 18 ¶ 63).

Plaintiff alleges that Defendant Freed called him out on November 13 for an interview on the *Cartensen* ticket and "demanded" Plaintiff's statement and investigation requests (*id.*, p. 13, ¶¶ 37, 38). Plaintiff advised Defendant Freed that he was working on a legal brief that was due the following day and requested until November 15 to produce the investigation requests (*id.*, pp. 13-14, ¶¶ 40, 41). Defendant Freed refused to provide Plaintiff with copies of the *Haynes* ticket and supporting documentation or review the contents of it with Plaintiff. While Freed did disclose the written statements supporting the *Cartensen* ticket, he refused to provide Plaintiff with copies. (*id.*, p. 14, ¶¶ 43, 44). Defendant Freed called Plaintiff out the following day, November 14, "demanding" the investigation requests (*id.*, p. 15, ¶ 47). Plaintiff did not have the requests done and Defendant Freed scheduled the hearing for November 15, 2000, before Defendant Kuiper (*id.*, ¶ 48). Plaintiff's allegations against Defendant Kuiper, the hearing officer for the *Cartensen* ticket, are that he refused to: (1) adjourn the hearing so that Plaintiff could submit his investigation requests; (2) allow an investigation; and (3) disqualify Defendant Freed as his hearing investigator (*id.*, p. 16, ¶ 51). Plaintiff further alleges that Defendant Kuiper stated "your lawsuits against the prison demonstrate an inability to adjust to prison and maybe thirty days detention will teach you (Plaintiff) some respect" (*id.*, ¶ 54). The Hearing Report indicates that Plaintiff told Defendant Kuiper that when he was told by an officer that he could not wear sweat pants to heath care he responded by asking where this was written (*id.*, Exhibit 7(B)). He said that the officer then responded by telling him to "go ahead and go" and that he wanted to show that the officer was lying

5

in the misconduct report. Plaintiff told Defendant Kuiper about his suspicions that Defendant Freed was related to Berry Freed and asked for more time to conduct an investigation. Defendant Kuiper indicated that Plaintiff had received 24 hours notice as required by MDOC policy and stated Plaintiff could have provided a statement and investigative requests to Defendant Freed at their meeting. Defendant Kuiper found that Plaintiff had been told not to go to health care wearing sweat pants, asked where this was written and then proceeded to health care in the sweat pants. Defendant Kuiper sustained the charge.

Subsequent to the hearing Plaintiff received copies of the *Haynes* ticket showing that it had been dismissed without a hearing because the reviewing Sergeant felt a yard pass showed that Plaintiff had returned to his unit as Haynes had ordered (Complaint, p. 12, ¶ 34). Because the yard pass information was contrary to Cartensen's statement in support of the *Haynes* ticket (Cartensen had stated that Plaintiff never returned to the unit), Plaintiff alleges that he should have been provided with the *Haynes* ticket information for use in his hearing on the *Cartensen* ticket for purposes of challenging Cartensen's credibility (*id.*, p. 18, ¶ 64).

On November 21, 2000, Plaintiff requested permission to file a grievance against Defendant Freed (Dkt. #53-12). He also filed an addendum to the request on November 23 (Dkt. #53-13). The request was rejected by the Grievance Coordinator on November 27, 2000 (Dkt. #53-14). On April 12, 2001, Plaintiff's administrative appeal of the second major misconduct ticket was denied (Dkt. #64-4, p. 2).

## II.     LEGAL STANDARD

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted

6

this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Lenz v. Erdmann Corp.*, 773 F.2d 62 (6th Cir. 1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983). Yet, once the moving party has satisfied the initial burden, the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party's failure to "make a sufficient showing to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial" will result in dismissal of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**III. ANALYSIS**

    **A.**    **§1983 Retaliation**

"Although state law provides the statute of limitations to be applied in a §1983 damages action, federal law governs the question of when that limitations period begins to run." *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (citations and internal quotation marks omitted). For civil rights suits filed in Michigan under §1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(8); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam). The cause of action begins to accrue when the prison knew or should have known of the injury which forms the

basis for the action. *Bagley v. C.M.C. Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). Yet, because 42 U.S.C. §1997e(a) mandates exhaustion of administrative remedies as a threshold requirement in prison litigation, the statute of limitations is tolled for the period during which a prisoner's available state remedies are being exhausted. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000) (citing *Harris v. Hegmann*, 198 F.3d 153, 157-59 (5th Cir. 1999) (per curiam).

The parties agree that Defendant Freed's actions about which Plaintiff complains took place between October 11 and November 15, 2000 (Dkt. #64, p. 3; Dkt. #53 p. 3). Plaintiff, who was on modified access status, requested permission to file grievances against Defendant Freed five times between October 18 and November 23, 2000 (*Id.*). He received the last rejection on November 27, 2000.

Defendants argue that Plaintiff's claims should have been filed, at the very latest on November 27, 2003, three years from the last rejection notice. Therefore, Defendants argue, because he did not file this lawsuit until February 25, 2004, his claims against Defendant Freed are time-barred.

Plaintiff argues that his cause of action did not accrue until the denial of the administrative review of the major misconduct ticket hearing decisions were issued, April 12, 2001, and adds that he deposited his complaint in the prison mail system on February 5, 2004, invoking the mailbox rule.[3]

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e, "requires that a prisoner

---

[3] Plaintiff is deemed to have filed his complaint on February 5, 2004, when he deposited it into the prison mail system. *Richard v. Ray*, 290 F.3d 810, 812 (6th Cir.2002) (civil actions filed by pro se prisoners are deemed "filed" on the date deposited in the prison mail system).

8

must exhaust administrative remedies before filing suit in the district court." 42 U.S.C.1997e; *Burton v. Jones,* 321 F.3d 569, 573 (6th Cir. 2003).

The Michigan Department of Corrections (MDOC) has a multi-step grievance process in place. First, within two business days, the prisoner must attempt verbally to resolve the dispute with those involved. If that fails, the inmate then must submit a Step I grievance within five days. The prison staff is required to respond within fifteen days. If the inmate is dissatisfied with the response, he may request a Step II appeal form within five days, and then has five additional days to submit it. If an inmate is dissatisfied with the result at Step II, he has ten business days to appeal to Step III, which concludes the grievance process. *See generally* MDOC Policy Directive 03.02.130.

When a prisoner, is placed on "modified access" to the grievance system, as Plaintiff was here, the rejection of a request to file a grievance suffices for the purpose of exhaustion because "all possible administrative remedies would have been attempted." *Walker v. Michigan Dept. of Corrections*, 128 Fed. Appx. 441, 446-447, 2005 WL 742743, *4 (6th Cir. 2005); *see, e.g., Hartsfield v. Mayer,* No. 95-1411, 1996 WL 43541, at *3 (6th Cir. 1996) (holding that the MDOC's modified grievance status does not in any way impinge upon a plaintiff's First Amendment right to access to courts); *see also*, 42 U.S.C. § 1997e(a) (requiring only exhaustion of *available* administrative remedies).

Therefore, Plaintiff's claims against Defendant Freed began to accrue, at the very latest, on November 27, 2000, and he was required to file his complaint against Defendant Freed on or before November 27, 2003.

To the extent Plaintiff is attempting to argue for equitable tolling because he was under the mistaken impression that he had to wait to file his retaliation claim against Defendant Freed until

9

he had received the final decisions on his administrative appeals of the major misconduct hearing decisions, that argument is without merit.

The statute of limitations may be equitably tolled if Plaintiff lacked actual or constructive notice of the filing requirements, diligently pursued his rights, tolling would not prejudice Defendants and Plaintiff was reasonably ignorant of the notice requirement. *See Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir. 1988); *Howard v. Rea*, 111 Fed. Appx. 419, 421, 2004 WL 2203573, *2 (6th Cir. 2004). Because Plaintiff has not alleged that he was unaware of the three year statute of limitations on §1983 actions in Michigan, nor set forth valid reasons why equity should prevail, tolling should not be applied.[4]

To the extent Plaintiff is attempting to argue that the retaliation claims against Defendant Freed were inextricably tied to claims that Plaintiff's major misconduct hearings were conducted without due process, this argument must also fail. For the reasons set out in the previous report and recommendation issued in this matter, Plaintiff's retaliation claims against Defendant Freed are

---

[4]

> Equitable tolling is not warranted in cases of excusable neglect. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). Nor is it warranted when there has been a mistake in interpreting a statutory provision. *Harris v. Hutchinson,* 209 F.3d 325, 330 (4th Cir.2000).

*Spencer v. White*, 265 F.Supp.2d 813, 818 (E.D. Mich. 2003).

Ignorance of the law alone is not sufficient to invoke equitable tolling. *Rose v. Dole,* 945 F.2d 1331, 1335 (6th Cir.1991); *see also Jourdan v. Jabe,* 951 F.2d 108, 109 (6th Cir. 1991) (concluding that, "while *pro se* litigants may be entitled to some latitude when dealing with sophisticated legal issues . . . , there is no cause for extending this margin to straightforward procedural requirements that a layperson can comprehend as easily as a lawyer."). A petitioner is not entitled to equitable tolling of the statute of limitations due to a lack of academic and legal education, or lack of knowledge of the law. *Turner v. Smith*, 70 F.Supp.2d 785, 787 (E.D. Mich.1999).

independent from the claims that the major misconduct hearings were conducted without due process. Defendant Freed's alleged actions, if found to be retaliatory and sufficient to discourage a reasonable person from engaging in protected activity, would have been actionable regardless of whether his actions had any influence on the hearings and regardless of final outcome of the hearings (including the appeal of such).

As noted in the earlier Report and Recommendation plaintiff's retaliation claim is that Defendant Freed chose to rush Plaintiff's misconduct tickets to a misconduct hearing without conducting the usual investigation and/or lulled Plaintiff into thinking he had more time to prepare and purposely scheduled the hearings when Plaintiff was unprepared. The constitutional tort of retaliation occurs when the defendant takes the retaliatory act, and this alleged wrongful action by Defendant Freed would not have been undone regardless of whether more adequate time for Plaintiff to prepare would or would not have changed the outcome at the misconduct hearing. While the actual consequences of what would have happened at that hearing if Plaintiff had greater preparation may be relevant to the measure of damages, it is not relevant to the issue of liability for retaliation. Unlike First Amendment access to the courts claims that do require a showing of prejudice as an element of the prima facie case, First Amendment retaliation claims do not require a showing of prejudice but only whether the retaliatory act would dissuade a person of ordinary prudence from exercising First Amendment rights.

The fact that Plaintiff's retaliation claim could succeed at a trial without a showing that the retaliatory act caused him to be found guilty on the ticket is the reason why a finding in this case of intentional misconduct on the part of Defendant Freed would not "*necessarily* impl[y] the invalidity of the decision" of hearing officers at the misconduct hearings. *Edwards v. Balisok,* 520 U.S. 641

11

(1997), and *Goodwin v. Ghee,* 330 F.3d 446 (6th Cir. 2003) (emphasis supplied). If it did necessarily imply the invalidity of hearings, Plaintiff would be correct that the statute of limitations had not run on the claim,[5] but there would be no claim under *Balisok* and *Goodwin* until and unless Plaintiff had his misconduct guilty findings overturned.

Therefore, the cause of action against Defendant Freed accrued independent of the major misconduct hearing reviews.

### B.     Michigan Constitution - Fair and Just Treatment - Art. 1, §17

If the Court adopts the recommendation to dismiss Plaintiff's federal cause of action against Defendant Freed, it would be proper for the Court to decline to exercise its supplemental jurisdiction over the state law claims. *See Weeks v. Portage County Executive Offices*, 235 F.3d 275, 279-80 (6th Cir. 2000); 28 U.S.C. § 1367(c)(3).

## IV. RECOMMENDATION

For the reasons stated above, IT IS RECOMMENDED that Defendants' Motion for Summary Judgment be GRANTED, and Plaintiff's §1983 Retaliation claim against Defendant Freed be dismissed with prejudice and Plaintiff's Michigan Constitution – Fair and Just Treatment claim against all defendants be dismissed without prejudice for lack of subject matter jurisdiction.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file

---

[5] *See Shamaeizadeh v. Cunigan,* 182 F.3d 391 (6th Cir. 1999) (§1983 cause of action that would imply invalidity of conviction does not accrue until prior conviction is reversed or expunged); *Smith v. Holtz,* 87 F.3d. 108 (3d Cir. 1996).

specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local*, 231, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: October 5, 2006                                           s/Steven D. Pepe
Ann Arbor, Michigan                                              United States Magistrate Judge


Certificate of Service

I hereby certify that a copy of this Report and Recommendation was served upon all parties of record of record by electronic means and or U. S. Mail on October 5, 2006.

                                                              s/Deadrea Eldridge
                                                              Courtroom Deputy Clerk